AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Central District of California



LODGED
CLERK, U.S. DISTRICT COURT
12/16/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JEFFREY SILLAS QUINTERO, and PATRICIA YAMILET CORADO LEMUS, <br><br> Defendants | Case No.  2:21-mj-05665-DUTY |

FILED
CLERK, U.S. DISTRICT COURT
12/16/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: __clee__ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 3, 2021, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1): | Distribution of a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*DEA SA Roger Chaney, Jr.*
Complainant's signature

Roger Chaney, Jr., Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: December 16, 2021

Judge's signature

Hon. Steve Kim, U.S. Magistrate Judge
Printed name and title

City and state:  Los Angeles, California

AUSA: Samuel J. Diaz (213) 894-3045

## **AFFIDAVIT**

I, Roger Chaney, Jr., being duly sworn, declare and state as follows:

### I.  **PURPOSE OF AFFIDAVIT**

1.   This affidavit is made in support of a criminal complaint and arrest warrants against Jeffrey Sillas QUINTERO ("QUINTERO"), and Patricia Yamilet CORADO LEMUS ("CORADO LEMUS"), for violation of 21 U.S.C. § 841(a)(1): Distribution of a Controlled Substance.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. **BACKGROUND OF AFFIANT**

3.   I am presently employed by the Drug Enforcement Administration ("DEA"), Los Angeles Field Division, as a special agent and have been so employed since October 2020.  I am currently assigned to the Ventura Resident Office.  Before becoming a DEA special agent, I was a Peace Officer Standards and Training ("POST") certified police officer in the State of Georgia for approximately eight years.  During my time as a

police officer, I worked for the patrol division as a patrol officer and as a supervisor holding the ranks of Sergeant and Lieutenant. I have attended and completed several law enforcement training courses and have obtained advanced officer trainings, including, but not limited to, the Georgia Peace Officer Standards and Training Basic Law Enforcement training and have received several hours of additional training and DEA Basic Agent training. I graduated from Fort Valley State University with a Bachelor of Arts degree in Criminal Justice. As a DEA special agent, I investigate a variety of federal drug crimes including, but not limited to, violations of 21 U.S.C. §§ 841, 843(B), 846, and 848. During my investigations, I have assisted with the seizure of drugs and arrested individuals, I have become familiar with the methods and practices used by drug traffickers to distribute and store drugs. I have conducted electronic and visual surveillance, questioned witnesses, executed search and arrest warrants, and worked with confidential sources and undercover agents.

### III. **SUMMARY OF PROBABLE CAUSE**

4. On September 6, 2021, an undercover law enforcement officer (the "UC") contacted a narcotics supplier, J.P., regarding a potential purchase of methamphetamine. J.P. told the UC that he had methamphetamine available and provided the UC with the phone number (323) 635-5444 and said that the person at the number would conduct the deal with the CS.

5. The UC then had a DEA Confidential Source (the "CS")[1] communicate directly with the user of the (323) 635-5444. The CS and the user of the (323) 635-5444 number arranged a series of drug buys.

6. On October 14, 2021, the CS met with the user of the (323) 635-5444 number and purchased 1,000 M30 pills suspected to contain fentanyl. Subsequent laboratory testing determined that the pills contained approximately 1.3 grams of pure fentanyl.

7. The user of the (323) 635-5444 number subsequently agreed to sell the CS two pounds of methamphetamine. On November 3, 2021, the user of the (323) 635-5444 number sent a then-unidentified female to conduct the deal with the CS. During the deal, the unidentified female gave the CS a large plastic bag with two smaller plastic bags containing a crystal-like substance suspected to be crystal methamphetamine in exchange for $1,800. Subsequent laboratory testing determined that the bags contained approximately 565 grams of pure methamphetamine.

8. As part of an additional deal with the user of the (323) 635-5444 number, on November 19, 2021, the CS again met with the unidentified female and purchased 2,000 M30 pills suspected to contain fentanyl in exchange for $2,800.

---

[1] The CS is being paid to assist law enforcement. The CS has been working with the DEA since approximately 2010. The CS has known convictions for the following crimes: possession and transportation of a controlled substance, violating a court order to prevent domestic violence, and driving under the influence. The CS has provided information in the past that has been corroborated and led to the seizure of narcotics.

9. The CS and the user of the (323) 635-5444 number engaged in a fourth deal on December 9, 2021. As part of that deal, the user of the (323) 635-5444 number provided the CS with 2,000 M30 pills suspected to contain fentanyl for $3,200. The pills were field tested and came back positive for fentanyl.

10. Law enforcement subsequently determined that QUINTERO was the user of the (323) 635-5444 number and that CORADO LEMUS was the woman who participated in the November 3, 2021, and November 19, 2021 drug transactions with the CS.

### IV. STATEMENT OF PROBABLE CAUSE

11. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

  **A. In September 2021, an undercover law enforcement officer arranged the purchase of methamphetamine from J.P. via Facebook**

12. On or about September 8, 2021, an undercover law enforcement officer with the Ventura County Sheriff's Office (the "UC") contacted a Facebook user to inquire about the availability and pricing of methamphetamine. Through viewing Facebook profile pictures, the UC identified this account as belonging to a man named J.P.

13. J.P. told the UC he had methamphetamine for sale for $900 per pound. During the conversation, J.P. advised that he also had "M30," and provided the UC the phone number (323) 635-5444. Agents believe that J.P.'s reference to "M30" referred to M30 pills containing fentanyl.

        B.    **In October 2021, the UC arranged for the purchase of approximately one thousand M30 pills.**

14. On or about October 13, 2021, the UC, using the same undercover law enforcement Facebook account the UC had used on or about September 8, 2021, contacted J.P. via Facebook and asked J.P. whether he had any methamphetamine for sale. J.P. told the UC that while he did not have any methamphetamine, he did have M30 pills for sale.

15. The UC replied that the UC was interested in purchasing one thousand M30 pills. J.P. responded that he could sell one thousand M30 pills to the UC the following day, on October 14, 2021, for $1.60 per pill. The UC and J.P. agreed to the deal.

16. The UC then asked J.P. how they were going to conduct the deal and J.P. gave the UC the telephone number (323) 635-5444. This was the same number that J.P. had previously given to the UC on or about September 8, 2021.

17. Less than an hour later, J.P. initiated a conference call involving himself, the UC, and another individual on Facebook Messenger. J.P. told the UC that this was the man who was going to meet with the UC the next day.

        C.    **On or about October 14, 2021, a DEA Confidential Source arranged to purchase approximately 1,000 M30 pills suspected to contain fentanyl from the user of the (323) 635-5444 number**

18. The UC then had follow-up text and call communications with the user of the (323) 635-5444 number to arrange the purchase of the M30 pills. The UC believes that the voice of the user of the (323) 635-5444 number was the same voice as the

5

man who had previously joined the conference call with the UC and J.P. on Facebook Messenger.  In a text message, the man sent the UC the address of a CVS parking lot located at 8008 Firestone Boulevard, Downey, California 90241, as the meet up location for their drug deal the following day.

19.   After obtaining the meet location, the UC arranged for a DEA Confidential Source (the "CS") to purchase approximately one thousand M30 pills suspected to contain fentanyl from the user of the (323) 635-5444 number on October 14, 2021.

20.   The next day, on or about October 14, 2021, at approximately 10:38 a.m., the UC contacted the user of the (323) 635-5444 number and told him that the UC would be sending a friend to the meeting location and that this friend was en route.

21.   At approximately 11:48 a.m., the man called the UC and told the UC he would be available to do the deal whenever the UC's friend arrived.  The UC responded that his friend was arriving shortly.

22.   At approximately 12:31 p.m., the CS arrived at the agreed-upon meeting location.  At approximately 12:33 p.m., the CS called the user of the (323) 635-5444 number and told him that he/she was at the agreed-upon meeting location in the CVS parking lot.  The man responded that he would be arriving shortly.

23.   At approximately 12:41 p.m., DEA Special Agent Gabriel Perez saw a man wearing a black baseball hat and a white hoodie arrive to the CVS parking lot on an electric scooter.  SA Perez

observed the man enter the passenger side of the CS's vehicle. Shortly after the man entered the car to meet with the CS, SA Perez observed the man depart the CVS parking lot on the electric scooter.

24. Following the meeting, at approximately 12:49 p.m., Det. Torres and I debriefed the CS and recovered a plastic bag containing approximately 1,000 blueish-green pills suspected to be M30 pills containing fentanyl from the CS's vehicle. The CS told us that during the meeting, the CS gave the man $1,600, which the CS had placed inside a coffee cup. The man counted the money and, in exchange, the man gave the CS a plastic bag containing the M30 pills.

25. The pills were then sent to the DEA's Southwest Laboratory for testing. Laboratory analysis determined that they contained 1.3 grams of pure fentanyl.

    D.    **In November 2021, the CS agreed to purchase two pounds of methamphetamine from the user of the (323) 635-5444 number. The user of the (323) 635-5444 number then sent a then-unidentified woman to conduct the deal with the CS.**

26. On or around November 2, 2021, the CS communicated with the user of the (323) 635-5444 number via phone calls and text messages to arrange for the purchase of approximately 2,000 M30 pills suspected to contain fentanyl and approximately two pounds of crystal methamphetamine.

27. The user of the (323) 635-5444 number told the CS that he did not have any M-30 pills, but that he did have methamphetamine available.

28. The user of the (323) 635-5444 number then texted the CS a meet up location of 17660 Lakewood Boulevard, Bellflower, California. The address corresponded to the Children's Clinic Family Health Center Bellflower. After obtaining the meet up location, the CS agreed to meet the user of the (323) 635-5444 number the following day, November 3, 2021, to purchase approximately two pounds of crystal methamphetamine.

29. On or around November 3, 2021, the CS contacted the user of the (323) 635-5444 number and told him that he/she was en route the agreed upon meet up location. The two negotiated a meet location and the user of the (323) 635-5444 number told the CS that the CS would be meeting with a female.

30. At approximately 1:16 p.m., the CS arrived at the meet location and called the user of the (323) 635-5444 number to tell him that he/she had arrived. The CS provided the user of the (323) 635-5444 number his/her location and a vehicle description.

31. At approximately 1:21 p.m., Ventura County Combined Agency Team ("VCAT") Det. Robert DeLaCarde observed an unidentified female with brownish-red hair and dark colored pants arrive at the meet location. SA Gabriel Perez observed the woman briefly speak with the CS at the CS's driver-side window, before walking around and entering the passenger side of the CS's vehicle. While inside the vehicle, the woman gave the CS a large plastic bag with two smaller plastic bags containing a crystal-like substance suspected to be crystal methamphetamine.

32. Following the meeting at approximately 1:28 p.m., Det. Torres and I recovered from the passenger's side of the CS's vehicle one large clear plastic bag containing two clear plastic ziploc-style bags containing a white crystalline substance, suspected to be crystal methamphetamine, which the woman had given to the CS in exchange for $1,800.

33. Subsequent DEA laboratory analysis determined that these bags contained approximately 565 grams of pure methamphetamine.

### E. Law Enforcement Observed the Woman Walk to an Apartment near the Location of the Deal

34. After the woman met with the CS and left him the plastic bags containing suspected crystal methamphetamine, SA Perez observed the woman leave the meeting location on foot and walk towards Lakewood Boulevard.

35. Det. Torres and I then observed the woman walking towards the Lakewood Park Apartments located at 17630 Lakewood Boulevard, Bellflower, California, before she walked out of sight of surveillance. Surveillance units remained in the area of the Lakewood Park Apartments.

36. At approximately 2:05 p.m., Sgt. Robert Davidson saw the woman emerge from the area of the Lakewood Park Apartments and begin walking towards the Bright Now! Dental, located at 17615 Lakewood Boulevard, Bellflower, California 90706.

37. Shortly afterwards, SA Perez observed the woman enter a blue Chevrolet Camaro and depart the area. Mobile

surveillance was conducted on the blue Chevrolet Camaro, by surveillance units.

38. At approximately 4:00 p.m., Sgt. Davidson saw the woman arrive back to the Lakewood Park Apartments. Shortly afterwards, VCAT Det. Christian Freede, who was out on foot surveillance in plain clothes, saw the woman enter what at first appeared to be Apartment 3. However, law enforcement determined that it was missing the number "2" since the apartments were numbered sequentially and the apartment next to the woman's apartment was Apartment 31. Hence, the woman had entered Apartment 32.

  **F.** **On November 17, 2021, the CS arranged to purchase an additional 2,000 M30 pills suspected to contain fentanyl from the User of the (323) 635-5444 number**

39. On or around November 17, 2021, and November 18, 2021, the C.S. communicated with the user of the (323) 635-5444 number to buy more drugs. The CS requested approximately 2,000 M30 pills suspected to contain fentanyl. Specifically, the CS told him, in Spanish, that the CS wanted "buttons" and "2 stalks" (coded language meaning 2,000 M30 pills). The user of the (323) 635-5444 number told the CS that he and the CS could come to an agreement.

40. The user of the (323) 635-5444 number told the CS that the CS could get the "buttons" the same way as the last time, which the CS understood to be a reference to the November 3, 2021 drug deal, and that the CS would receive them from the same woman as last time.

41. On November 19, 2021, at approximately 11:09 a.m., the CS arrived at the previously agreed-upon meet location, the Children's Clinic Family Health Center Bellflower on 17660 Lakewood Boulevard, Bellflower, CA 90706.  The CS called user of the (323) 635-5444 number and told him that the C.S. was at the meet location and provided user of the (323) 635-5444 number his/her location and a vehicle description.

42. SA Perez, who was conducting surveillance on foot, saw the same woman from the November 3, 2021 drug deal near 17630 Lakewood Boulevard, Apt. 32, Bellflower, CA, CORADO LEMUS.  SA Justin Botzet further saw CORADO LEMUS arrive at the meet location at approximately 11:18 a.m.

43. Law enforcement then saw CORADO LEMUS briefly speak with the CS at the CS's driver's window, before walking around, and entering the passenger side of the CS's vehicle.  According to the CS, while inside the vehicle, CORADO LEMUS gave the CS two plastic bags, each containing approximately 1,000 blueish green M30 pills, suspected of containing fentanyl in exchange for $2,800.

44. That same day, SA Drew Kalies and I field tested the pills and they tested positive for the presence of fentanyl.  The suspected narcotics were shortly after mailed to the DEA Southwest lab for further testing.  Results are pending.

G. **In December 2021, the CS arranged the purchase of approximately 2,000 pills suspected to be M30 pills containing Fentanyl.**

45. On or about December 8, 2021, the CS communicated with the user of the (323) 635-5444 number via calls and text

messages to arrange the purchase of approximately 2,000 suspected M30 fentanyl pills for $3,200.

46. At approximately 12:14 p.m. on December 9, 2021, the user of the (323) 635-5444 number contacted the CS and provided a meet location of a CVS Pharmacy on 3710 Tweedy Boulevard in South Gate, California.

47. At approximately 12:51 p.m., VCAT Sergeant Robert Davidson observed a maroon Ford Ranger bearing California license plate number 90486E3, arrive and park in the parking lot of CVS.

48. At approximately 1:06 p.m., the CS arrived at a parking lot adjacent to the CVS.  Shortly thereafter, the CS called the user of the (323) 635-5444 number and advised that s/he was in the parking lot and provided the user of the (323) 635-5444 number his/her vehicle location and vehicle description.

49. At approximately 1:10 p.m., VCAT Det. Adam Garnier observed the driver exit the Ford Ranger, and begin walking towards the CS's vehicle.  Shortly thereafter, the user of the (323) 635-5444 number entered the front passenger side of the CS's vehicle.  Once inside the vehicle, the user of the (323) 635-5444 number gave the CS two plastic bags containing blueish-green pills, suspected of being M30 pills containing fentanyl in exchange for $3,200.

50. SA Drew Kalies and I later conducted a field test of the suspected M30 pills.  The pills tested positive for

fentanyl. The pills were sent to the DEA's Southwest Lab for further testing. Results are pending.

- H. **Law Enforcement Identified QUINTERO as the Man who Met with the CS to Conduct Drug Deals on October 14, 2021, and December 9, 2021, and Conducted a Probable Cause Arrest on December 14, 2021**

51. On December 9, 2021, law enforcement obtained a tracker warrant on the Ford Ranger, 21-MJ-05602, signed by the Hon. Louise A. LaMothe, which the user of the (323) 635-5444 number had used to meet with the CS during the drug deal that same day. The Ford Ranger was registered to QUINTERO.

52. On December 14, 2021, using the tracker, law enforcement located the Ford Ranger in the San Bernardino, California area and went to conduct a probable cause arrest.

53. At approximately 1:45 p.m. on December 14, 2021, Ventura County deputies conducted a traffic stop of the Ford Ranger. The driver was the only person in the vehicle. He provided law enforcement with a Mexican driver's license in the name of Jeffrey Sillas QUINTERO. Agents compared the photograph on the identification card to the man they had seen conduct drug deals with the CS on October 14, 2021, and December 9, 2021, and determined that it was the same man. QUINTERO was subsequently placed under arrest.

- I. **Law Enforcement Identified the Woman who Participated in the November 3, 2021, and November 19, 2021 Deals as CORADO LEMUS and Conducted a Probable Cause Arrest on December 15, 2021**

54. After agents observed the woman involved with the November 3, 2021, and November 19, 2021 drug deals walk to 7630

Lakewood Boulevard, Apartment 32, Bellflower, California, I obtained a search warrant for the apartment signed by the Honorable Louise A. LaMothe, on December 14, 2021.

55. On December 14, 2021, agents searched the apartment. Next to a table near the door, they found a backpack on a chair. Inside the backpack they found a U.S. Employment Authorization card in the name of "Patricia Y. Corado Lemus." Agents reviewed the picture on the employment authorization card and confirmed that the woman in the picture was the same woman who had met with the CS during the controlled buys on November 3, 2021, and November 19, 2021. Accordingly, law enforcement determined that the woman who sold drugs to the CS was CORADO LEMUS. Additional law enforcement investigation revealed CORADO LEMUS's email address. Using her email, law enforcement found a Facebook profile for a person named "Patty Yamileth." Agents compared this picture to the woman who they had seen meet with the CS on November 3, 2021, and November 19, 2021, in Bellflower, California and determined that it was the same woman. In addition, I have also learned that CORADO LEMUS was on probation for a traffic offense in Oxnard, California and had listed 17630 Lakewood Boulevard, Apt. 32, Bellflower, California as her address with probation.

56. CORADO LEMUS was not at the apartment during the search, but law enforcement left a card.

57. On December 15, 2021, CORADO LEMUS called the DEA's Ventura Resident Office and spoke with SA Kallies. She told him that she was willing to meet with law enforcement. Law

enforcement went to her apartment to meet with her. She identified herself as Patricia CORADO LEMUS and was read her Miranda rights. She declined to speak with law enforcement and was placed under arrest, on the basis of probable cause, at approximately 1:50 p.m.

## V.  CONCLUSION

58. For all of the reasons described above, there is probable cause to believe that Jeffrey Sillas QUINTERO and Patricia Yamilet CORADO LEMUS have committed a violation of 21 U.S.C. § 841(a)(1): Distribution of a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 16th day of
December, 2021.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE